UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GERALDINE E. TILLEY,                )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        Civil Action
                                    )        No. 04-CV-11220 NG
1836 COUNTRY STORE, et al.,         )
                                    )
                Defendants.         )
                                    )

## MOTION TO DISMISS COMPLAINT

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, having no basis upon which to believe personal
jurisdiction exists over the majority of defendants,[1]
nevertheless filed this copyright action in this judicial
district, forcing defendants to incur unnecessary fees and costs
associated with challenging plaintiff's glaring omission and
obtaining a dismissal.  With respect to the majority of
defendants, none of the traditional means by which a court
confers jurisdiction can be met in this case.  Likewise,
plaintiff cannot meet her burden of establishing that these
defendants have sufficient contacts with the forum state.  The
majority of defendants do not reside in this judicial district
and the infringement complained of largely did not occur within

---

[1] The defendants' do not contest jurisdiction over those defendants domiciled
in Massachusetts.  The defendants count that only 19 of the 510 defendants
have a Massachusetts address.

this state.  As such, defendants respectfully request this court
dismiss the instant action for lack of personal jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(2).

## II.  FACTS

In her complaint, plaintiff alleges copyright infringement
based upon defendants' alleged sale of a wallpaper design
entitled "Harbortown Border" (Complaint, ¶10).  The names and
addresses of the defendants were acquired from the alleged
distributor of the items in question, Dennis East International,
Inc. ("Dennis East").  Dennis East, which acquired these items
from a Chinese manufacturer, was sued in a separate lawsuit.
After a jury trial in June 2004, Dennis East was found to be a
non-willful infringer of this design.  As such, plaintiff was
only entitled to Dennis East's net profits earned on the sale of
the items in question.[2]

In this action, the plaintiff baldly asserts that "[t]he
defendants are all businesses who have transacted business in
Massachusetts and have sufficient contacts with Massachusetts to
subject them to the requirements for personal jurisdiction in
this judicial district." (Complaint, ¶5.)  These "sufficient
contacts" are not further described, despite the fact that the

---

[2] One other retailer, The TJX Companies, Inc., a Massachusetts-based
corporation, was sued in the Dennis East case.  It stipulated to $6,576 of
gross sales before trial.  TJX did not attempt to prove net sales.  That
accounting exercise was not worth the cost.

plaintiff knows that the majority of defendants are not domiciled in Massachusetts.

## III. PROCEDURAL HISTORY

The plaintiff filed this complaint against the 510 defendants on June 4, 2004 (the Friday before the Dennis East trial began). The plaintiff then sent to the defendants by mail on June 8, 2004 a request to waive service pursuant to Fed. R. Civ. P. 4. Some (but not all) of the defendants returned the waiver form.

On June 29, 2004, the undersigned entered an appearance for all of the defendants and agreed to waive service on behalf of each, expressly reserving the right to contend lack of personal jurisdiction in a motion such as this.

Shortly thereafter, counsel for the defendants mailed "check-the-box" affidavits to each of the defendants, asking each to affirm certain facts pertaining to personal jurisdiction. To date, approximately 214 of the 510 defendants have responded. Those affidavits, including a summary sheet, are attached as an exhibit to this motion.

## IV. ARGUMENT

## A. This Complaint Should Be Dismissed As Plaintiff Cannot Meet Her Burden To Show Personal Jurisdiction Over Defendants.

The plaintiff bears the burden of demonstrating that each of the defendants' conduct satisfies Massachusetts' long-arm

3

statute and that the exercise of jurisdiction pursuant to the statute "comports with the strictures of the Constitution." Foster-Miller, Inc. v. Babcock and Wilcox Canada, 46 F.3d 138, 144-45 (1st Cir. 1995), quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994); Digital Equipment Corp. v. Alta Vista Technology, 960 F. Supp. 456 (1997)(Gertner, J.).

The plaintiff attempts to gloss over her obligations by alleging that "the defendants are all businesses who have transacted business in Massachusetts and have sufficient contacts with Massachusetts to subject them to the requirements for personal jurisdiction in this jurisdictional district." (Complaint, ¶5). Clearly, this conclusionary averment is not sufficient when the plaintiff is well aware that the vast majority of the defendants do not have any physical presence in Massachusetts and she does not allege that the offensive conduct occurred in the state.[3]

In the present case, plaintiff cannot establish personal jurisdiction as many defendants (1) are not domiciled in this judicial district; (2) did not sell the infringing items within this state; (3) do not consent to jurisdiction; and

---

[3] The personal jurisdiction issue was briefed for this Court and the First Circuit in connection with the defendant class certification battle. While the First circuit noted that the constitutional issues, including personal jurisdiction, were "vexing," it decided the class action matter without addressing personal jurisdiction of the defendants. Tilley v. TJX Cos., Inc., 345 F.3d 43 n.8 (1st Cir. 2003).

4

(4) lack sufficient "minimum contacts" with this forum.

### 1.   The Traditional Means By Which Personal Jurisdiction Is Obtained Do Not Exist.

The three bases for exercise of personal jurisdiction recognized since early common law are:  (1) service within the state (see Burnham v. Sup. Ct., 495 U.S. 604, 610-611 (1990)); (2) domicile in the state (see Milliken v. Meyer, 311 U.S. 457, 462-463 (1940)); or (3) consent (see Pennoyer v. Neff, 95 U.S. 714, 722 (1877)).  See also, Moore's Fed. Practice 3d, §108.22 (p. 108-27).  None of these traditional means is applicable here.

In the present case, service was not made on any of the defendants.  Only 19 are domiciled in Massachusetts, and none has consented to jurisdiction.  Because these traditional means of conferring personal jurisdiction are absent, the plaintiff must prove personal jurisdiction by establishing sufficient contacts with Massachusetts.  As discussed below, she cannot do so under either the requisite long-arm statute or the "minimum contacts" test.

### 2.   There Is No Jurisdiction Over The Majority Of The Defendants Under The Massachusetts Long-Arm Statute And The Minimum Contact Test.

A court's exercise of personal jurisdiction over a non-resident defendant, like the majority of defendants here, presents a two-fold inquiry:  (1) whether the plaintiff has

5

demonstrated that the assertion of jurisdiction is authorized by
statute and, if authorized; (2) whether such assertion is
consistent with the basic due process requirements.  Sawtelle v.
Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Foster-Miller, Inc.
v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995).
The court applies the long-arm statute of the forum state (i.e.,
the Massachusetts long-arm statute) (Sawtelle, 70 F.3d at 1387)
and may consider facts outside the pleadings when making its
determination.  Boyt v. Gar-Tech Products, Inc., 967 F.2d 671,
675, 681-82 (1st Cir. 1992)(when faced with a Rule 12(b)(2)
motion, a plaintiff must go beyond the pleadings and
affirmatively prove that sufficient contacts exist between the
defendant and the forum state); Callahan v. Harvest Bd. Intern.,
Inc., 138 F. Supp.2d 147, 152-53 (D. Mass. 2001)(Dein,
MJ)(unlike a Rule 12(b)(6) motion, "the consideration of
materials outside the complaint is appropriate in ruling on a
[Rule 12(b)(2)] motion to dismiss for lack of personal
jurisdiction").

### a.    Massachusetts Long-Arm Statute Is Not Triggered.

The Massachusetts Long-arm Statute provides several bases
to assert jurisdiction over a non-resident defendant.  The long-
arm statute reads:

> A court may exercise personal jurisdiction
> over a person, who acts directly or by an
> agent, as to cause an action in law or equity

> arising from the person's (a) transacting any
> business in this commonwealth; (b) contracting
> to supply services or things in this
> commonwealth; (c) causing tortious injury by
> act or omission in this commonwealth; (d)
> causing tortious injury in this commonwealth
> by act or omission outside this commonwealth
> if he regularly does or solicits business...or
> derives substantial revenue in this
> commonwealth; (e) having an interest in, using
> or possessing real property in this
> commonwealth; (f) contracting to insure any
> person, property or risk located within this
> commonwealth...; (g) [jurisdiction concerning
> the marital relationship]; or (h)
> [jurisdiction concerning on alimony or child
> support].

M.G.L.c. 223A, §3.   "By its terms, especially the 'as a cause of
action...arising from' language, [the long-arm statute] largely
adopts the theory of specific personal jurisdiction...."
Landmark Bank v. Machera, 736 F. Supp. 375, 383 (D. Mass.
1990)(Young, J.).

The facts here do not trigger any provision of the long-arm
statute.   Sections (e-h) are clearly inapplicable.   Section (e)
concerns real property (not intellectual property); section (f)
applies only to insurers; and sections (g) and (h) concern
domestic relations.   With regard to sections (a)-(d), the
attached affidavits establish that the defendants in question
conducted their business activities outside the Commonwealth,

and if they caused any "tortious injury,[4]" it was by selling allegedly infringing goods largely outside the Commonwealth. The affidavits also reveal that the defendants in question did not regularly do or solicit business in the Commonwealth; in fact, it is uncontroverted that many of the defendants in question are "mom and pop" stores without business pursuits beyond their domicile.

To establish that the defendants were "transacting business" as set forth in section (a), the facts must show that (1) the defendants transacted business in Massachusetts; and (2) the plaintiff's claim arises out of that business. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138 (1995). In other words, the plaintiff must show that the defendants committed copyright infringement (i.e., selling the Harbortown Border) in Massachusetts. With regard to many defendants, this did not occur (and plaintiff does not assert facts to the contrary).

Section (b) is also inapplicable. Here, it is alleged that the defendants purchased the offensive goods in Massachusetts (from Dennis East), not that the defendants contracted to supply

---

[4] It is unresolved whether the plaintiff's copyright infringement claims constitute a "tortious injury." Patent infringement is considered "tortious injury," Systemation, Inc. v. Engel Inds., Inc., 992 F. Supp. 58 (1997), but here plaintiff's only viable claim is for the recovery of defendants' profits. In the underlying case this court ruled as a matter of law that she was not "injured" by this infringement and did not suffer actual harm. Accordingly, subsection (c), which requires an "injury," is not likely applicable here.

8

goods or services in the state. It is well established that purchasing goods in the forum state does not confer personal jurisdiction on the purchaser. See Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 28 (1980); Freedom Wireless, Inc. v. Boston Communications Group, Inc., 218 F. Supp.2d 19, 24 (2002)(Harrington, SJ)("the mere act of purchasing from an in-state seller is usually an insufficient basis for the assertion of personal jurisdiction"); Barrow Industries, Inc. v. JST America, Inc., 2000 U.S. Dist. LEXIS 7490 (2002)(Cohen, MJ), citing Heliocopteros Nacimales de Colombia, S.A. v. Hall, 466 U.S. 406, 408-09, 418 (1984).

Section (c) requires that the defendants' actions caused tortious injury in the state. For the purposes of this section, a tortious injury does not occur in Massachusetts merely because the plaintiff (here, a Massachusetts resident) feels the effects of the offensive conduct in the forum state. U.S. v. Swiss American Bank, Ltd., 191 F.3d 30 (1999); Cunningham v. Androx, Inc., 40 Mass. App. Ct. 279, 663 N.E.2d 577 (1996). Without an act of infringement (i.e., sale) occurring in Massachusetts, section (c) is not triggered.

Section (d) is also inapplicable. As the affidavits reveal, the defendants in question do not regularly do business in the state or derive substantial revenue herein. See, e.g., Kolikof v. Samuelson, 488 F. Supp. 881, 884 (D. Mass.

1980)(Caffrey, J.)(company with sales between $57,498 and $141,018 in Massachusetts did not derive substantial revenue in state when these figures represented 3.2% of total sales). These are largely "mom and pop" stores with no significant connection to the state.

That a few of the defendants in question have web-sites accessible to Massachusetts residents is not a sufficient basis to confer jurisdiction. Without something more, having a web-site does not confer universal jurisdiction. Comer v. Comer, 295 F. Supp.2d 201, 209 (D. Mass. 2003)(Neiman, MJ)("[N]either the United States Supreme Court nor, it appears, any court within this circuit has held that a mere internet presence, without more, establishes personal jurisdiction."); see also, Rye v. Atlas Hotes, Inc., 30 Mass. App. Ct. 904, 566 N.E.2d 617 (1991)(maintaining a toll-free number accessible by Massachusetts residents was not enough to establish jurisdiction).

## b. Due Process Precludes A Finding Of Personal Jurisdiction.

Assuming arguendo that jurisdiction can be established under the long-arm statute, due process considerations preclude jurisdiction. In order to establish personal jurisdiction over a non-resident defendant in a way consistent with due process, the defendant must either have (1) "substantial, continuous and

10

systematic" presence in the forum state which would give the court general jurisdiction over the defendant or (2) certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." See International Shoe Co. v. Washington, 326 U.S. 310, 314 (1945); Digital Equipment Corp., 960 F. Supp. at 468.

The first consideration, which confers general jurisdiction, is clearly not applicable here. The standard for "substantial, continuous and systematic" presence is very high. See Glater v. Eli Lilly Co., 744 F.2d 213, 215 (1st Cir. 1985)(Indiana corporation which employed eight salespeople in New Hampshire, conducted business in the state and advertised in a trade journal magazine which is distributed there did not have sufficient contacts to justify general jurisdiction); United Elec., Radio, and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir. 1992)(owning a subsidiary company in Massachusetts was "manifestly insufficient" to warrant general jurisdiction over defendant); Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998)(directly soliciting business in Massachusetts resulting in orders amounting to some $585,000 was insufficient for general jurisdiction).

This case concerns the allegation of specific jurisdiction and minimum contacts.  The "minimum contacts" test focuses on

three issues:  (1) relatedness; (2) purposeful availment; and
(3) reasonableness.  Plaintiff must satisfy each to establish
minimum contacts.  United Electrical, 960 F.2d at 1089.[5]

The affidavits establish that this litigation does not
"directly arise out of" the defendants' forum state activities.
The only connection many of the defendants have to this forum is
the alleged purchase of goods from Dennis East.  As previously
discussed, purchasing goods in the forum is not enough.  The
defendants' subsequent sale of those goods, the alleged activity
that gives rise to the infringement, occurred largely outside
the jurisdiction and involved parties, namely the defendants and
their customers, who are domiciled outside of the Commonwealth.
There is certainly no allegation that the defendants conspired
with Dennis East to infringe; Dennis East has already been found
a non-willful infringer.  Further, there is no relationship
between any of the defendants and the plaintiff.  Accordingly,

---

[5] As the First Circuit explained, in order to satisfy the minimum contacts
test, a non-resident defendant must meet the following requirements:

> First, the claim underlying the litigation must
> directly arise out of, or relate to, the defendants'
> forum state activities.  Second, the defendants' in-
> state contacts must represent a purposeful availment
> of the privilege of conducting activities in the forum
> state, thereby invoking the benefits and protections
> of that state's laws and making the defendant's
> involuntary presence before the state's courts
> foreseeable.  Third, the exercise of jurisdiction
> must, in light of the gestalt factors, be reasonable.

United Electrical, 960 F.2d at 1089.

the plaintiff cannot establish that the claim arises from the defendants' in-state activity.

The purposeful availment test focuses on two cornerstones: foreseeability and voluntariness. Ticketmaster-NY, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). Foreseeability requires that each defendant's "conduct and connection with the form state [must be] such that he should reasonably anticipate being haled into court there." Id., quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Courts caution that voluntariness requires more than the "unilateral activity of another party or a third person." Ticketmaster, 26 F.3d at 208, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Here, the defendants had no reasonable expectation of being haled into court in Massachusetts. There is no allegation that the defendants knew of or suspected the alleged infringement or that the defendants had a business relationship with (or even knowledge of) the plaintiff. There is nothing about their alleged activity that would suggest a purposeful availment to this forum.

Five "gestalt factors" are used to determine fairness and reasonableness. They are:

1.   The defendants' burden of appearing;
2.   The forum state's interest in adjudicating the dispute;

13

3.    The plaintiff's interest in
      obtaining convenient and effective
      relief;
4.    The judicial system's interest in
      obtaining the most effective
      resolution of the controversy; and
5.    The common interest of all
      sovereigns in promoting substantial
      social policies.

Ticketmaster, 26 F.3d at 209.  Courts and commentators instruct

that a court "may not exercise jurisdiction over a non-resident

defendant, even if the balance of fairness factors, including

litigational convenience and the interests of effective

nationwide administration of justice, strongly favor the forum

state.  In fact, no circuit court has allowed the reasonableness

inquiry to compensate for a defendant's insufficient minimum

contacts.  Consideration of the [five factors] is necessary only

after the minimum contacts threshold has been met."  Moore's

Fed. Practice 3d, 108.42[5][b], pp. 108-73-74 (case citations

omitted).

The gestalt factors swing in favor of the defendants when

one considers the enormous burden and cost associated with

defending in this jurisdiction and the relatively minor amount

of damages available to the plaintiff.  There is no dispute that

many of the defendants purchased only a handful of the allegedly

infringing items.  Further, plaintiff's own expert, Dr. Michael

Cragg, who furnished a written report and was deposed in the

Dennis East action, opined that collective gross profit of all

14

the retailers was $149,909. (See attached report of M. Cragg.)
Because the statute entitles plaintiff only to the net profits
of the defendants, the value of this case, even assuming
liability and plaintiff's own opinion regarding damages, must be
significantly less. In fact, taking the plaintiff's own
figures, the average gross profits earned by each of the 510
defendants in this case is less than $300 ($149,909÷510). If
one assumes a customary 10% profit margin, plaintiff, according
to her own number, is entitled to approximately $30 from each
defendant.

Given these economic realities, the forum state's interest
in adjudicating this dispute is quite low. Clearly, the state
has an interest in seeing that one of its residents recovers
from infringement; however, the state's interest is diminished
when the damage incurred is relatively small and the costs and
efforts associated with providing a forum to resolve the matter
will exceed the plaintiff's loss.

From the perspective of the plaintiff, the defendants
acknowledge that single suit in a single forum (such as this) is
a convenient way for the plaintiff to litigate this case.
However, as the above quoted commentators and courts state, the
overwhelming considerations in any Rule 12(2) motion are the
hardships imposed on the defendant by litigating in a foreign
forum. Accordingly, when one considers the economic realities

of this case, the fairness and reasonable considerations favor
the defendants.

**B.    If The Complaint Is Not Dismissed Outright, Counsel For The
Defendants Should Have Reasonable Time To Collect Remaining
Affidavits.**

The defendants request that the complaint be dismissed
(without prejudice) in its entirety, based on the plaintiff's
reckless and baseless averments of personal jurisdiction over
the majority of the defendants. If, however, this Court is
inclined to dismiss only those defendants who can show
affirmative proof (via affidavit) that personal jurisdiction is
not warranted, the defendants respectfully request additional
time to follow-up with the yet unresponsive defendants.[6] The
affidavits attached reveal that only 214 of the 510 defendants
have responded to counsel's mass mailing. If counsel for the
defendants were given additional time to make follow-up contact
with those who have not responded (and check for new addresses
and the like), it is expected that the vast majority of those
yet to respond by affidavit will indicate a lack of personal
jurisdiction with this forum. Additional time is reasonable,
given the unusually large number of defendants, and the
plaintiff's unconventional approach.

---

[6] The defendants also seek permission to correct an ambiguity in the form
affidavit. In the last sentence of the form affidavit it is unclear whether
the prepositional phrase "in Massachusetts" refers to the location of sale or
further describes this lawsuit. Defendants believe this confusion led to
many "false positive" responses.

16

## IV.   CONCLUSION

Defendants cannot be forced to litigate this case in Massachusetts.  Plaintiff had no reason to believe that defendants were subject to this court's jurisdiction.  The majority of the defendants are not domiciled in Massachusetts, do not conduct business in Massachusetts, and do not otherwise have sufficient contacts with the state so as to justify this court exercising personal jurisdiction over them.  Plaintiff's error was obvious upon the most cursory review of the facts of this case.  As such the complaint must be dismissed (without prejudice) for lack of personal jurisdiction, and the costs associated with this motion should be awarded to the defendants.

Dated:  August 9, 2004

                         DEFENDANTS
                         By their attorneys,


                         David M. O'Connor
                         BBO No. 544166
                         Joseph C. Abate
                         BBO No. 566705
                         O'CONNOR & ASSOCIATES
                         100 State Street, 4th Floor
                         Boston, MA   02109
                         (617) 723-7201

17

## CERTIFICATE OF SERVICE

I, Joseph C. Abate, hereby certify that a true and accurate copy of the above document was served by 1st class mail on all counsel of record on August 9, 2004.

_____
Joseph C. Abate